```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
In re: LEAR CORPORATION, et al.,                            :
                                                            :
                    Reorganized Debtors.                    :    12 Civ. 2626 (KBF)
                                                            :
------------------------------------------------------------X
                                                            :    MEMORANDUM
                                                            :    OPINION & ORDER
LEAR CORPORATION, et al.,                                   :
                                                            :
                    Appellants,                             :
                                                            :
        v.                                                  :
                                                            :
SUSAN LACAVA, et al.,                                       :
                                                            :
                    Appellees.                              :
------------------------------------------------------------X
```

KATHERINE B. FORREST, District Judge:

Lear Corporation and affiliated companies (collectively referred to as "Lear") filed for bankruptcy in July 2009 in the Southern District of New York. See In re Lear Corp., No. 09-14326 (ALG), 2009 WL 6677955, at *1 (Bankr. S.D.N.Y. Nov. 5, 2009) (Order Confirming Plan). It negotiated with creditors and other stakeholders to discharge billions of dollars of claims. On November 5, 2009, the Bankruptcy Court approved its plan for reorganization (the "Plan"), see id. at *5, and the Plan became effective on November 9, 2009 (the "Effective Date").

In October 2011, a group of plaintiffs filed a putative class action alleging Lear's participation in a price-fixing conspiracy. See LaCava v. Delphi Auto. LLP, No. 11-14555 (E.D. Mich. filed Oct. 5, 2011). This action was consolidated for pre-

1

trial purposes with a number of related antitrust actions (the "Antitrust Actions") in the Eastern District of Michigan (the "MDL Court") pursuant to an order of the Judicial Panel on Multi-District Litigation.

Almost immediately after the filing of the LaCava action, on November 17, 2011, Lear filed a motion in the bankruptcy court requesting entry of an order enforcing the discharge and injunction provisions of its Plan and directing the dismissal of the Antitrust Actions. See In re Lear Corp., No. 09-14326 (ALG), 2012 WL 443951, at *1 (Bankr. S.D.N.Y. Feb. 10, 2012) (Memorandum of Opinion Enforcing Discharge). Susan LaCava, on behalf of the antitrust plaintiffs, argued that after the Effective Date, Lear had engaged in acts giving rise to antitrust liability not discharged by the Plan. See id. According to the antitrust plaintiffs, Lear's post–Effective Date conduct "in furtherance of the price-fixing conspiracy . . . made Lear liable for damages throughout the term of the conspiracy under principles of antitrust law." Id. at *10.

On March 9, 2012, the Bankruptcy Court issued an order enjoining the antitrust claims to the extent they were based on conduct that occurred before Lear's November 9, 2009, discharge from bankruptcy. See In re Lear Corp., No. 09-14326 (ALG), Slip Op. at 3 (Bankr. S.D.N.Y. Mar. 9, 2012) (Order Enforcing Discharge). The Order also provided that confirmation of the Plan did not prohibit the "Antitrust Plaintiffs from asking the court or courts presiding over the Antitrust Actions to measure liability on the part of the Reorganized Debtors in the Antitrust Actions based on actions or activity that occurred prior to the Effective Date." See

id.; see also In re Lear Corp., 2012 WL 443951, at *1. Lear has appealed that order to this Court. The matter was fully briefed on June 5, 2012, and oral argument was held on October 16, 2012.

## I. STANDARD OF REVIEW

The District Court acts as the first level appellate review for orders from the bankruptcy court. See Fed. R. Bankr. P. 8013. On appeal, the court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Id. District courts review the legal determinations of a bankruptcy court de novo. See, e.g., In re Quebecor World (USA) Inc., No. 11 Civ. 7530 (JMF), 2012 WL 4477247, at *4 (S.D.N.Y. Sept. 28, 2012). They review a bankruptcy court's decision to permissively abstain for abuse of discretion. See In re Pan Am. World Airways, Inc., 950 F.2d 839, 844 (2d Cir. 1991). A bankruptcy court has abused its discretion if its decision "rest[s] on an error of law" or a "clearly erroneous factual finding," or if it "cannot be located within the range of permissible decisions." In re Aquatic Dev. Grp., 352 F.3d 671, 678 (2d Cir. 2003) (quoting Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001)).

## II. APPLICABLE BANKRUPTCY LAW

Bankruptcy courts are the courts of first instance for "core proceedings." See 28 U.S.C. § 157. Section 157 presents a non-exhaustive list of core proceedings. Among those identified are "determinations as to the dischargeability of particular debts." Id. § 157(b)(2)(I). Bankruptcy courts may, in the interest of justice, abstain

3

from making determinations in chapter 11 proceedings. See 28 U.S.C. § 1334(c)(1). However, where the jurisdiction of bankruptcy courts is proper, "abstention is the exception rather than the rule." In re Chi., Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184, 1189 (7th Cir. 1993); see also New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 358-59 (1989) (discussing limits of abstention for federal courts generally).

Section 1141 of the Bankruptcy Code sets forth the effect of a bankruptcy court's confirmation of a plan of discharge. Pursuant to that section, "the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141. Section 101(12) defines the term "debt" to mean "liability on a claim." Id. § 101(12). "Claim," in turn, is defined as "right to payment, whether or not such right is reduced to judgment, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Id. § 101(5).

Accordingly, confirmation of a plan discharges all liability on claims that arose before the date of confirmation.

### III. THE QUESTIONS PRESENTED

The parties have argued this appeal as they argued the motion before the bankruptcy court — without clearly delineating between critical events and periods of time. Whether and when these events occur must be broken apart in order to appropriately determine which questions should be determined by which court. Accordingly, while this Court finds the bankruptcy court's decision to abstain to be

4

based on an erroneous application of law and thus, strictly speaking, an "abuse of discretion," the Court acknowledges that the error was largely a result of the presentation of the issues below. The Court therefore remands this matter to the bankruptcy court for resolution of two questions, as set forth below.

Lear's original motion sought dismissal of all of the Antitrust Actions filed against it. That position lumped together various analytically distinct timeframes.

First, there is the pre–Effective Date timeframe. Despite Lear's opening brief on this motion which argues that claims relating to pre–Effective Date conduct cannot stand (see, e.g., Appellants' Br. 8, ECF No. 11), no one is arguing that they do. Both in their briefs and at oral argument on this motion, Appellees stated that they are not arguing for the imposition of liability as a result of any conduct in which Lear may have engaged pre–Effective Date. (See, e.g., Appellees' Br. 10-11, ECF No. 13; Oct. 16, 2012 Hr'g Tr. 10:17-11:12.) The order of the Bankruptcy Court is unambiguous that pre–Effective Date conduct cannot give rise to claims for liability. Such claims have been discharged. See In re Lear Corp., 2012 WL 443951, at *1, *11.

However, the more complicated time period — and the period that forms the subject of this Court's decision to remand — relates to Lear's alleged post–Effective Date conduct, which could potentially subject Lear to liability for acts committed both before and after the Effective Date. In particular, co-conspirators in antitrust actions may be held jointly and severally liable for damages that pre-date their own entry into the conspiracy. See, e.g., Havaco v. Am., Ltd. v. Shell Oil Co., 626 F.2d

549, 554 (7th Cir. 1980); cf. United States v. Castillo, 814 F.2d 351, 355 (7th Cir. 1987).

This potential for joint and several co-conspirator liability requires the Court to break Lear's alleged post–Effective Date conduct into two "buckets": (1) conduct that may result in post–Effective Date damages (e.g., damages measured prospectively from the date of the alleged conduct only, and which occur after the Effective Date); and (2) conduct that might, in the absence of a bankruptcy discharge, result in liability for pre–Effective Date damages — whether it be damages for Lear's own conduct or the conduct of alleged co-conspirators. The first bucket involves questions properly left to the MDL court. This Court does not remand questions relating to that bucket for further determination.

The second bucket, however, is where the complexity lies. That conduct directly raises two questions regarding the scope of the discharge, which the Bankruptcy Court was not clearly asked to answer. Both questions assume that that the following proposition is true, decided, and not at issue: that Lear has a "clean slate" with respect to its own pre–Effective Date conduct; if it engaged in any antitrust violations pre–Effective Date, liability has been discharged. The remaining questions relating to the scope of the discharge are as follows:

Question 1: If the MDL Court finds that Lear engaged in post–Effective Date conduct constituting an antitrust violation, does the bankruptcy discharge preclude the MDL Court from assessing damages against Lear for its own conduct, going back to the beginning of the alleged antitrust conspiracy (nine years before the

Effective Date)? Put another way, can Lear's post–Effective Date conduct cause discharged damages to "come alive again" — or are discharged damages discharged forever?

Question 2: If the MDL Court finds that Lear, **along with co-conspirators**, engaged in post–Effective date conduct constituting an antitrust violation, does the bankruptcy discharge preclude the MDL Court from holding Lear **jointly and severally liable for pre–Effective Date damages that relate only to the conduct of its co-conspirators?**[1]

Both questions directly require interpretation of the scope of a bankruptcy discharge. They turn on the interpretation of the Bankruptcy Code and not on antitrust law or state law. They do not require the bankruptcy court to decide whether certain conduct can result in antitrust violations or whether post–Effective Date conduct can result in post–Effective Date damages only. They do not require the bankruptcy court to decide whether antitrust laws require or permit co-conspirators to be held jointly and severally liable for damages from before they entered the conspiracy. In short, they are questions that were properly before the bankruptcy court, that the bankruptcy court was best positioned to answer, and for which abstention was not appropriate.[2]

---

[1] The Court notes that there are good policy reasons to suggest an answer to both questions in either direction. Certainly there is great interest providing a "clean slate" to discharged debtors. There is also an interest in imposing a standard measure of liability on the post-discharge conduct of discharged debtors. A steep reduction in liability for recently discharged debtors could result in an unanticipated moral hazard.

[2] Although 28 U.S.C. § 1334 provides little guidance as to when abstention is appropriate, the Seventh and Ninth Circuit Courts of Appeal have offered twelve factors that should inform that decision:

## IV. RIPENESS

Lear has filed a motion to dismiss the Antitrust Actions against it. If the Antitrust Actions against Lear are dismissed, the questions above will be moot. However, the MDL Court has not yet ruled on that motion. The questions above are thus ripe for determination, because Lear currently faces exposure to pre–Effective Date damages from active antitrust litigation. Moreover Lear will continue to face exposure to pre–Effective Date damages if the MDL Court does not dismiss the Antitrust Actions or if the antitrust plaintiffs appeal a dismissal.

Lear's current exposure to pre–Effective Date liability is sufficient to render this matter ripe for adjudication. On the one hand, if Lear cannot be held liable for pre–Effective Date damages, certain claims may be eliminated, and the potential damages for claims that remain could be significantly curtailed. On the other hand, if Lear may be subject to liability for pre–Effective Date periods, that determination could affect the reserves Lear must take out now. It also directly affects the conduct

---

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

Chicago, Milwaukee, 6 F.3d at 1189 (quoting In re Eastport Assoc., 935 F.2d 1071, 1075-76 (9th Cir. 1991)). It is unnecessary to analyze these factors one-by-one to see that none provides a sufficient basis for the Bankruptcy Court to abstain from deciding a question as central to its jurisdiction as the effect of the plan it confirmed.

of Lear's management and creditors, who must adjust their behavior according to Lear's exposure to liability. Finally, the scope of Lear's bankruptcy discharge directly affects settlement negotiations and litigation strategy for all parties in the Antitrust Actions. For example, depending on the answers to the above questions, the parties to the Antitrust Actions may need to retain damages experts to work on reports relating to the pre-Effective Date period and may need to investigate factual matters that occurred exclusively before the Effective Date. These are all current issues requiring clarity on the scope of the discharge.

## V. CONCLUSION

Accordingly, this Court finds that the Bankruptcy Court abused its discretion in not answering the questions set forth above. Stated now, as questions going directly to "scope of the discharge", they are posed in a manner more directly in the area of expertise of the Bankruptcy Court in the first instance.

For the foregoing reasons, Questions 1 and 2 as set forth above are remanded to the Bankruptcy Court for determination.

The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated:    New York, New York
          November 5, 2012

_____
KATHERINE B. FORREST
United States District Judge